**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:23-cv-00248-MR-SRR**

| | |
|---|---|
| **MARCUS DEVAN HUNTER,**<br>**a/k/a VERSA DIVINE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **ORDER** |
| ) | |
| **PETER R. BUCHHOLTZ, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

THIS MATTER is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983. [Docs. 1, 1-2]. See 28 U.S.C. §§ 1915(e)(2); 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 7].

I. BACKGROUND

Pro se Plaintiff Versa Divine (also known as Marcus Devan Hunter) ("Plaintiff") is a transgender female prisoner of the State of North Carolina currently incarcerated at Foothills Correctional Institution ("Foothills") in Morganton, North Carolina.[1] On August 29, 2023, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) Peter R. Buchholtz, "Commissioner of Corrections;" (2) Kimberly Grande, Executive

_____

[1] Because the Plaintiff uses inconsistent self-referring gender pronouns in the Complaint [see Doc. 1 at 31 ("her"), 38 & 39 ("their")], the Court will use the gender-neutral they/them/their gender pronouns when referring the Plaintiff.

Director of the Inmate Grievance Resolution Board (IGRB); (3) Harold Reep, Foothills Warden; (4) Marc E. Dunn, Foothills Unit Manager; (5) Eric L. Price, Foothills Unit Manager; (6) Marlene Holcombe, Foothills psychologist and Director of Behavioral Health; (7) Jeffry Lorborbaum, Foothills psychiatrist; (8) Newton D. High, Foothills physician's assistant; (9) FNU Abee, Foothills nurse manager and member of the Foothills Transgender Accommodation Review Committee (FTARC); and (10) J. Newton, Foothills Americans with Disabilities Act (ADA) Coordinator. [Doc. 1 at 1-6]. Plaintiff purports to sue all Defendants in their individual and official capacities. [See id.]. Plaintiff alleges as follows.

On January 11, 2023, while housed at Central Prison in Raleigh, North Carolina, Plaintiff attempted suicide because of "inadequate treatment of gender dysphoria and the harsh conditions of confinement." [Id. at 31]. On April 1, 2023, the Central Prison Facility Classification authorities approved Plaintiff's release to the regular population. [Id.]. On May 2, 2023, the IGRB upheld the Central Prison authorities' decision that Plaintiff does not qualify "for ADA and that rehabilitative services are not mandatory conditions of confinement for Plaintiff." [Id.]. On May 8, 2023, Plaintiff sent a grievance to the "Commissioner of Corrections," presumably Defendant Buchholtz, requesting protective control housing due to Plaintiff's transgender status

and "increased risk of being victimized by abusive staff and other offenders ... and … retaliated against by transphobic/anti-trans staff members."  [Id. at 32].  Plaintiff did not receive a response to that grievance.  [See id.].

On May 15, 2023, Plaintiff was transferred to Foothills and immediately assigned to Modified Housing for Regular Population (MODH), "a housing arrangement with harsh, atypical, and constant isolating conditions."  [Id. at 33].  The next day, having been previously approved for regular population, Plaintiff inquired why they "[were] not afforded any process prior to being assigned to MODH."  [Id.].  The same day, Defendant Dunn, Unit Manager, responded to Plaintiff's inquiry that, "Once you complete [restrictive housing] you are placed into MODH."  [Id.].

On May 27, 2023, following an incident where Plaintiff threatened to file a grievance against an H-Unit staff member who was "harassing, intimidating, and discriminating against Plaintiff," Plaintiff was placed in restrictive housing where Plaintiff's "property, basic necessities, stationary, and legal materials" were confiscated.  [Id. at 34].  The same day, Plaintiff filed a grievance addressed to Defendant Price, the grievance screening manager for E-Unit, requesting protective custody from the "ongoing campaign of harassment."  [Id. at 34-35].  Plaintiff did not receive a response to that grievance.  [See id. at 35].

On May 30, 2023, while presumably still in restrictive housing, Plaintiff began a hunger strike to call attention to the deprivation of their property while in restrictive housing. Plaintiff gave Defendant Reep written notice of the deprivations and hunger strike. [Id.]. The same day, Plaintiff also submitted a request to Behavioral Health Services requesting a treatment plan for their gender dysphoria symptoms and a sick call request for "treatment associated with disorder of sexual development." [Id.].

On June 2, 2023, Plaintiff was brought before the FTARC, which consisted of Defendants Dunn, High, Price, Holcombe, Abee, and another unidentified staff member. [Id. at 36]. At this meeting, Plaintiff detailed the aforementioned deprivations and "harassment, intimidation, discrimination, and retaliation" and requested protective control and "gender affirming hygiene transitioning items." [Id. at 36].

On June 5, 2023, Plaintiff submitted another request for behavioral health services, documenting symptoms of depression, lack of appetite, and "societal repression of transness." [Id. at 37]. Plaintiff also wrote a letter to Defendant Holcombe stating that they would continue their hunger strike until their issues were redressed. [Id.]. The same day, Plaintiff was notified that a May 30, 2023 grievance, which complained about their MODH assignment, had been rejected by Defendant Price because Plaintiff "requested a remedy

for more than one incident" in the grievance.  [Id. at 38; see Doc. 1-2 at 6].

On June 13, 2023, Plaintiff was brought to Defendants Reep and Price, where Plaintiff reiterated all their "complaints, concerns, and requests including protective control, transfer, and monitoring." [Id.].  Defendant Reep expressed genuine concern and told Plaintiff he would "check into things." [Id. at 39].  Defendant Price stated that he had received Plaintiff's May 30 grievance and "would give it process."  [Id.].

On June 14, 2023, Plaintiff had a telehealth appointment with Defendant Lorberbaum, a psychiatrist.  [Id.].  At this appointment, Plaintiff explained their depression, anxiety, gender dysphoria, and need for transition items, such as hormone therapy, hair removing crème, and skin repair lotion.  [Id.].  The next day, Plaintiff was released from restrictive housing and again assigned to MODH "under protest by Defendants Price and Dunn."  [Id. at 40].

Between June 15, 2023, and July 15, 2023, Plaintiff experienced numerous incidents of harassment, intimidation, discrimination and "refusals for private showering accommodations by various assigned non-ranking staff."  [Id.].  On June 18 and 22, 2023, Plaintiff wrote to Defendant Dunn to report "the time and dates that staff on unit were depriving Plaintiff of private showering … arrangements" and "the incidences of harassment,

5

intimidation, and discriminations." [Id. at 42]. Plaintiff also again requested protective custody. [Id.]. On at least one occasion, Defendant Dunn responded in writing, reporting that he "spoke to staff" about the private showering accommodations. [Id.]. On July 7, 2023, Foothills official Douglas Taylor rejected Plaintiff's grievance complaining of harassment because Plaintiff already had an "Active Grievance in Process." [Id. at 43; Doc. 1-2 at 8].

On July 12, 2023, Defendant Dunn rejected Plaintiff's July 11 grievance complaining that Plaintiff "was being subjected to mass punishment and harassment by the usual officers that had previously continued to harass Plaintiff" because Plaintiff had an "Active Grievance in Process." [Id.; see Doc. 1-2 at 10]. On July 14, 2023, Plaintiff was brought to Defendant Dunn's office to address a grievance related to inadequate medical care. Plaintiff also raised the "seriousness of the situation involving Plaintiff's previously requested protections and reports" to Defendant Dunn at that time. [Id. at 43-44]. Plaintiff tried to resubmit the previously rejected July 7 grievance because Plaintiff had resolved the pending grievance in the meantime. [Id. at 44]. Defendant Dunn did not allow Plaintiff to resubmit that grievance "in that moment and informed Plaintiff that he would investigate and repost the officers that [Plaintiff] was reporting." [Id.].

On July 15, 2023, Plaintiff was subjected to retaliation and harassment "by the very same officers that Plaintiff had reported the day before to Defendant Dunn." [Id. at 45]. Plaintiff then suffered a panic attack and began kicking the cell door. Plaintiff was removed to restrictive housing. [Id.]. On July 17, 2023, Plaintiff addressed a grievance to Defendant Price requesting transfer due to constant victimization and supervisory staff's failure to protect Plaintiff. [Id. at 46]. The grievance was returned to Plaintiff "unsigned with no notice of acceptance or rejection." [Id.].

On August 9, 2023, Plaintiff sent a letter grievance to the IGRB. It named all the Defendants, alleging "their violations of Plaintiff's rights." [Id. at 47]. The letter "requested that the grievance board would accept Plaintiff's comments about facility staff routinely thwarting Plaintiff's grievances, and requesting that the grievance board accept [Plaintiff's] grievance or compel facility staff to receive [their] grievance." [Id.].

On August 16, 2023, Plaintiff submitted a DC-746 Inmate Reasonable Accommodation Request Form (IRAR) and letter to Defendant Newton, "declaring that Plaintiff has disability, gender dysphoria, and explaining Plaintiff's Limitations, and requesting accommodations for the Limitations commensurate with applicable standards of care." [Id. at 48]. Plaintiff alleges, "[u]pon information and belief Defendants will not grant any of

7

Plaintiff's requests, provide accommodations, protections, nor administrative remedy." [Id. at 49]. On August 21 and 24, 2023, Plaintiff was threatened by unidentified Foothills staff with the use of pepper spray, tasers, and other weapons for Plaintiff "being 'too needy,' 'faggot/queer,' and 'complaining too much.'" [Id.]. Plaintiff dated their Complaint August 24, 2023, and it was received by the Court on August 29, 2023. [Id. at 1, 16].

Plaintiff claims violation of their rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; the ADA, 42 U.S.C. §§ 12131-12134; and the Rehabilitation Act of 1973, 29 U.S.C. § 794a, Section 504; and Article 1, Section 27 of the North Carolina State Constitution[2] based on Defendants' conduct. [Id. at 7-8].

For injuries, Plaintiff claims to have suffered "P.T.S.D.; bloodloss; cardiac arrest; lacerations to neck and head; stomach cramping; genital pain; depression; anxiety; inadequate treatment for gender dysphoria; male

---

[2] Plaintiff alleges that their Fourth Amendment "[r]ight to private showering and freedom from cross gender voyeurism" was violated. [Doc. 1 at 7]. Plaintiff's Complaint does not implicate the Fourth Amendment and this claim will be dismissed. Plaintiff also purports to state a Fifth Amendment claim based on the right to be free from retaliation and the right "to file grievances with nonfrivolous claims." [Doc. 1 at 7-8]. There are no such rights under the Fifth Amendment and these claims will also be dismissed.

Article 1, Section 27 of the North Carolina State Constitution prohibits the infliction of cruel and unusual punishment. [See Doc. 1 at 7]. Plaintiff does not allege how this provision was violated and Section 1983 does not provide relief for violations of State constitutional provisions. The Court, therefore, declines to exercise supplemental jurisdiction over this claim, see 28 U.S.C. § 1367(c)(3), and it will be dismissed.

8

voyeurism; [and] emotional distress[.]"  [Id. at 10 (errors uncorrected)].  For relief, Plaintiff seeks monetary relief, including punitive damages, and costs. [Id. at 10].

In their Complaint, Plaintiff reported that they had an action pending in the Eastern District of North Carolina dealing with the same facts involved in the instant case, which Plaintiff filed in March 2023 while they were incarcerated at Central Prison.  [Doc. 1 at 14 (citing Case No. 5:23-ct-03087-BO-RJ (E.D.N.C.)].  United States District Judge Terrence W. Boyle has since dismissed that action after Plaintiff failed to state a claim for relief in their Amended Complaint.  [Case No. 5:23-ct-3087, Doc. 20 at 2-3].

## II.    STANDARD OF REVIEW

The Court must review Plaintiff's Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune

9

from such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023). Because Plaintiff failed to connect their legal claims to any particular factual allegations [see Doc. 1 at 7-8], the Court will address those claims fairly raised by Plaintiff's allegations.

## A. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). Except as provided below, Plaintiff's official capacity claims, therefore, do not survive initial review and will be dismissed.

## B. First Amendment

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). More, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id., 40 F.3d at 74.

Taking Plaintiff's allegations as true and giving the Plaintiff the benefit of every reasonable inference, Plaintiff has nonetheless failed to state a First Amendment retaliation claim against any Defendant. That is, Plaintiff has not alleged that any Defendant took adverse action against Plaintiff causally related to Plaintiff's protected activity. The Court will dismiss this claim.

### C. Eighth Amendment

Plaintiff purports to state claims under the Eighth Amendment based on the "right to be free from deliberate indifference towards obvious risk of harm;" the "right to be free from humiliating strip searches;" the "right to be

free from inadequate treatment and deliberate indifference to serious medical need for having gender dysphoria;" the "right to be free from physical, mental and emotional harm by excessive, harsh, isolation;" and the "right to be free from the threat of assault, abuse and/or excessive force." [Doc. 1 at 7-8]. The Court, therefore, will consider Plaintiff's Eighth Amendment claims as predicated on alleged unconstitutional conditions of confinement and deliberate indifference to a serious medical need.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious— and subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Nonetheless, the law is well-established that taunting comments, slurs, threats, and other verbal harassment by correctional facility staff, without more, are not actionable under § 1983. Wilson v. United States, 332 F.R.D. 505, 520 (S.D. W.Va. Aug. 19, 2019) (collecting cases).

Taking Plaintiff's allegations as true and giving them the benefit of every reasonable inference, Plaintiff has nonetheless failed to state an Eighth Amendment claim based on their conditions of confinement against

any Defendant. Plaintiff's claims and allegations in this regard are too vague and lacking in any detail to state a claim for relief. For instance, Plaintiff claims that they have a "right to be free from humiliating strip searches," but makes no allegations regarding having been subjected to such searches. Moreover, harassment, verbal threats, and intimidation do not amount to Eighth Amendment violations, Wilson, 332 F.R.D. at 520, and Plaintiff's vague allegations of "excessive, harsh, isolation" while in restrictive and modified housing are insufficient to state an Eighth Amendment violation, particularly where Plaintiff's housing placement was warranted by Plaintiff's conduct and prison policy. Plaintiff also fails to allege sufficient facts showing that any Defendant was subjectively aware of an objectively sufficiently serious harm. In this regard, Plaintiff's allegations are again too vague and lacking detail to support these components of an Eighth Amendment claim. As such, Plaintiff's Eighth Amendment claims based on the conditions of their confinement will be dismissed.

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the

inmate.  Id.  "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."  Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).  "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention."  Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). A prison official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted).

Even though the Plaintiff's allegations are extremely vague, accepting them for the purposes of this initial review and drawing all reasonable inferences in their favor, Plaintiff's Eighth Amendment claims based on deliberate indifference to their serious medical claims against Defendants Dunn, High, Price, Holcombe, and Abee survive initial review as not clearly frivolous for their alleged denial of care for Plaintiff's gender dysphoria. Plaintiff, however, has failed to state such a claim against any other Defendant in this matter.

### D. Fourteenth Amendment

#### 1. Due Process

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017).

Plaintiff here claims that their Fourteenth Amendment rights were violated because he was not afforded "notice and hearing and opportunity to

be heard prior to assignment to harsh conditions" or "the right to file grievances with nonfrivolous claims." [Doc. 1 at 7-8]. Plaintiff's allegations do not support a claim based on their assignment to MODH or restrictive housing. Rather, their allegations show that prison policy supported Plaintiff's initial move to MODH from restrictive housing on May 15, 2023, and June 15, 2023, and that Plaintiff's conduct warranted their movement to restrictive housing on May 27, 2023. The alleged conditions to which Plaintiff was subject in restrictive housing, including temporary isolation and the deprivation of their property, while certainly not ideal or desired, were not "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Moreover, Plaintiff's claims based on the alleged denial of grievance procedures necessarily fail as a matter of law. The Court, therefore, will dismiss Plaintiff's claims under the Fourteenth Amendment.[3]

---

[3] To the extent Plaintiff seeks to raise a due process claim based on the deprivation of their personal property, they have failed because Plaintiff has an adequate post-deprivation remedy in state tort law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (stating that intentional deprivations of property do not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) ("Under North Carolina law, an action for conversion will lie against a public official who by an unauthorized act wrongfully deprives an owner of his property.").

### 2. Equal Protection

To state an equal protection claim, a plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)).

While Plaintiff here alleges that his "[r]ight to be free from discrimination" was violated, he does not specifically implicate his Fourteenth Amendment right to equal protection. [See Doc. 1 at 7]. The Court, nonetheless, considers whether Plaintiff has stated a claim for violation of this right. Taking Plaintiff's allegations as true and giving them the benefit of every reasonable inference, Plaintiff has failed to state an equal protection claim. While Plaintiff alleges that he was subject to harassment and intimidation by various unidentified prison staff, he makes no "specific, non-conclusory factual allegations" that establish an improper discriminatory motive against any Defendant. The Court will dismiss this claim.

### E.    ADA and Rehab Act

Plaintiff alleges that Defendants have refused to accommodate their disability of gender dysphoria.  Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."  42 U.S.C. § 12132.  The ADA defines "public entity" to include "any State or local government" and "any department, agency, … or other instrumentality of a State." United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877 (2006) (citing 42 U.S.C. § 12131(1)).  "[T]his term includes state prisons."   Id. (citing Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952 (1998)).

To establish a prima facie case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which she was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Miller v. Hinton, 288 Fed. App'x 901, 902 (4th Cir. 2008) (citations omitted). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities.  42 U.S.C. § 12131(2).  The duty of reasonable accommodation,

however, must also consider whether the institution's actions are related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987); Tanney v. Boles, 400 F.Supp.2d 1027, 1050 (E.D. Mich. 2005) (noting that courts have applied Turner to ADA and Rehab Act claims). A plaintiff must also establish an actual injury from any alleged ADA or Rehab Act violation. See Rosen v. Montgomery Cty. Md., 121 F.3d 154, 158 (4th Cir. 1997).

The Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The analysis under the Rehab Act is generally the same as under the ADA. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 214 (4th Cir. 2002). Claims under the Rehab Act, however, require a showing of discrimination "solely by reason of" disability, 29 U.S.C. § 794(a), while under the ADA, a plaintiff must only show discrimination "by reason of" disability, 42 U.S.C. § 12132. As such, the causation standards are "significantly dissimilar." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n.17 (4th Cir. 2005) (citation omitted). In addition, to sustain a claim under the Rehab Act, a plaintiff must also show that the

program or activity in question receives federal financial assistance. <u>Thomas v. The Salvation Army Southern Territory</u>, 841 F.3d 632, 641 (4th Cir. 2016).

Neither the Rehab Act nor Title II of the ADA, however, provide for individual capacity suits against state officials. <u>See</u> <u>Barnes v. Young</u>, 565 Fed. App'x 272, 273 (4th Cir. 2014) (unpublished) (quoting <u>Garcia v. S.U.N.Y. Health Sciences Ctr.</u>, 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases)); <u>see</u> <u>Baird v. Rose</u>, 192 F.3d 462, 472 (4th Cir. 1999) (there is no ADA retaliation claim against defendants in their individual capacities); <u>Moneyhan v. Keller</u>, 563 Fed. App'x 256, 258 (4th Cir. 2014) ("Neither the ADA nor the Rehabilitation Act authorizes suits for monetary damages against Defendants in their individual capacities.") (citation omitted). Such a suit, therefore, may only be brought against a defendant in an official capacity. <u>Id.</u> As such, Plaintiff's individual capacity ADA and Rehab Act claims necessarily fail and will be dismissed.

As for Plaintiff's official capacity ADA claims, taking Plaintiff's allegations as true and giving them the benefit of every reasonable inference, Plaintiff's claims against Defendants Reep, Grande, Dunn, High, Price, Holcombe, and Abee in their official capacities survive initial review as not clearly frivolous based on their alleged denial of potential ADA accommodations. <u>See</u> Williams v. Kincaid, 45 F.4th 759, 770 (4th Cir. 2022)

(recognizing that a plaintiff may allege sufficient facts "to render plausible the inference that her gender dysphoria 'result[s] from physical impairments,'" and is, therefore, not excluded from the ADA's protections) (citing 42 U.S.C. § 12211(b)(1)).  Plaintiff, however, has failed to state a claim under the ADA against any other Defendant.  In this regard, Plaintiff alleges having submitted an IRAR to Defendant Newton only days before filing the instant Complaint and alleges, on information and belief, that such request will be denied. Plaintiff cannot state a claim based on a prediction of a denial of their request.

Plaintiff, however, has failed to state a claim against any Defendant under the Rehab Act because Plaintiff failed to allege that the program or activity in question receives federal financial assistance.  See Thomas, 841 F.3d at 641.  As such, Plaintiff's Rehab Act claim will be dismissed.

## IV.    CONCLUSION

In sum, Plaintiff's Eighth Amendment medical deliberate indifference claim against Defendants Dunn, High, Price, Holcombe, and Abee in their individual capacities and Plaintiff's ADA claim against Defendants Reep, Grande, Dunn, High, Price, Holcombe, and Abee in their official capacities survive initial review.  The Court will dismiss all remaining claims and the remaining Defendants in this matter.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Eighth Amendment medical deliberate indifference claim against Defendants Dunn, High, Price, Holcombe, and Abee, in their individual capacities only, and Plaintiff's ADA claim against Defendants Reep, Grande, Dunn, High, Price, Holcombe, and Abee, in their official capacities only, survive initial review.

**IT IS FURTHERED ORDERED** that all remaining claims are **DISMISSED** on initial review for Plaintiff's failure to state a claim for relief. See 28 U.S.C. §§ 1915(e)(2), 1915A.

**IT IS FURTHER ORDERED** that Defendants Buchholtz, Lorborbaum, and Newton are **DISMISSED** as Defendants in this matter.

**IT IS, THEREFORE, ORDERED** that Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Reep, Grande, Dunn, High, Price, Holcombe, and Abee, who are alleged to be current or former employees of the North Carolina Department of Adult Corrections.

The Clerk is also instructed to mail Plaintiff an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

**IT IS SO ORDERED**.

Signed: November 8, 2023

Martin Reidinger
Chief United States District Judge