UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00248-MR

| | |
|---|---|
| MARCUS DEVAN HUNTER, ) <br> a/k/a Versa Divine, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> KIMBERLY GRANDE, et al., ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF <br> DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendants' Motions to Dismiss. [Docs. 26, 37].

**I.  PROCEDURAL BACKGROUND**

Pro se Plaintiff Marcus Devan Hunter a/k/a Versa Divine ("Plaintiff") is a transgender female prisoner of the State of North Carolina currently incarcerated at Central Prison in Raleigh, North Carolina.

This is not the first action Plaintiff has filed regarding the issues found herein.  On or about March 21, 2023, Plaintiff filed a four-page, handwritten Complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of North Carolina against the North Carolina Department of Adult Correction (NCDAC) and other purported, unnamed prison official Defendants alleging that "Defendants" had failed to provide

medically necessary care for gender dysphoria.[1] Plaintiff also alleged having suffered sexual harassment, sexual assault, and sexual abuse by prison staff and fellow prisoners since having begun the outward expression of female gender. [Civil Case No. 5:23-ct-03087-BO-RJ (E.D.N.C.) (the "Eastern District case"), Doc. 1 at 1-2; Doc. 1-3 (postmark)]. Pursuant to the Eastern District Court's Order, on April 12, 2023, Plaintiff filed a new Complaint in that action. [Id., Doc. 4, 5]. Therein, Plaintiff named seventeen Defendants, including the NCDAC, 13 individual Defendants, and three correctional institutions. [Id., id. at 4-9]. On May 15, 2023, Plaintiff was transferred to Foothills Correctional Institution ("Foothills"), which is in Morganton, North Carolina. Then, on May 24, 2023, in the Eastern District case, Plaintiff filed an Amended Complaint consisting of 81 pages exclusive of exhibits, against 16 Defendants, setting forth in detail Plaintiff's lifetime experience with transgender issues, gender dysphoria, and being intersex[2] and alleged related experiences while incarcerated. [Id., Doc. 15].

---

[1] Gender dysphoria is "a condition characterized by clinically significant distress and anxiety resulting from the incongruence between an individual's gender identity and birth-assigned sex." Kadel v. Folwell, 100 F.4th 122, 136 (4th Cir. 2024) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 451 (5th ed. 2013) ("DSM-5")).

[2] Intersex generally refers to being born with atypical external genitalia or lack of concordance among various sex characteristics such as sex chromosomes, gonads, or external genitalia. More recently, intersex has been renamed "Disorders of Sexual Development" in the DSM-5.

On June 5, 2023, the Honorable Terrence W. Boyle, United States District Judge, conducted an initial review of Plaintiff's Complaint and Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). [Id., Doc. 17]. Noting that Plaintiff's pleadings "are not a model of clarity" and that "the court is unsure what claims plaintiff seeks to bring with this action," Judge Boyle directed Plaintiff to file "one amended complaint" naming "the specific defendant(s) responsible for his claims" and "giv[ing] the named defendant(s) fair notice of his claims and the factual basis upon which the claim(s) rest." [Id., id. at 2]. Judge Boyle also admonished Plaintiff that "he must exhaust all available administrative remedies for any § 1983 claims prior to filing an action." [Id., id. (citations omitted)].

On or about June 15, 2023, Plaintiff timely filed a Second Amended Complaint in the Eastern District case, naming the following Defendants: (1) NCDAC, (2) Central Prison, (3) Secretary of Corrections Eddie Buffaloe, Jr., (4) NCDAC Commissioner Todd Ishee; (5) Director of Health and Wellness Gary Junker, (6) Assistant Commissioner Brandeshawn Harris, (7) Medical Director Arthur Campbell, (8) Director of Healthcare Administration Terry Catlett, (9) Chief of Psychiatry Brian Sheitman, (10) Director of Nursing Valerie Langley, RN, (11) Deputy Medical Director Abhay Agarwal, (12) Director of Rehabilitative Services Sarah Cobb, (13) Director of Operations

3

Josh Panter, (14) Prison Rape Elimination Act ("PREA")[3] Director Charlotte Williams, and (15) Utilization Review Board Member Elton Amos.[4] [Id., Doc. 19 at 4-8, Doc. 19-2 at 2 (date notation)]. Plaintiff sued Defendants in their official capacities only. [Id., Doc. 19 at 4-8]. Plaintiff sought to allege claims arising at six different correctional institutions, including Foothills, which is in the Western District. [Id., id. at 11]. Plaintiff alleged, *inter alia*, that, from "December 2020 through until present":

> Defendants have repeatedly rejected my requests to be provided gender-affirming healthcare and surgery, gender-consistent facility housing – wrongfully deeming it as "elective." … Each Defendant named knows that I am a transgender woman suffering from gender dysphoria and a disorder of sexual development and … that my current and previous healthcare has failed to adequately treat my gender dysphoria and disorder of sexual development. …I am constantly denied protections, redress of grievances, and medically necessary care.

---

[3] The PREA, 34 U.S.C. § 30301, seeks to establish "zero tolerance" for the incidence of prison rape. The purpose of this Act is to protect inmates in correctional facilities from sexual abuse and sexual assault. Gadeson v. Reynolds, No. 2:08-3702-CMC-RSC, 2009 WL 4572872, at *3 (D.S.C. Dec. 4, 2009).

[4] In a grievance dated January 26, 2023, Plaintiff complained that all members of the Transgender Accommodation Review Committee ("TARC") had "denied, delayed, ignored, and deferred [Plaintiff's] requests" for gender dysphoria treatment, including the NCDAC, the Secretary of Correction, the Commissioner/Director of Prisons, the Director of Healthcare Administration, the Director of Behavioral Health, the Chief of Psychiatry, the Director of Rehabilitative Services, the Director of Nursing, the Director of Operations, the Deputy Chief Medical Officer, the Director of Rehabilitative Services, the PREA Director, and Dr. Elton Amos, member of the Utilization Review Board. [Doc. 27-7 at 2-4]. Thus, several Defendants in the Eastern District case were TARC members.

[Id., id. at 11-12 (errors uncorrected)]. Plaintiff alleged that these deprivations began when Plaintiff was housed at Harnett Correctional Institution and that "[t]he most significant places of occurrence" include Maury CI, Pasquotank CI, Scotland CI, and Central Prison. [Id., id. at 12]. Plaintiff further alleged that "each [Facility Transgender Accommodation Review Committee ("FTARC")] and [Division Transgender Accommodation Review Committee ("DTARC")[5]] record and sick call indicates" these deprivations. [Id., id.]. In addition to monetary relief, Plaintiff sought injunctive relief requiring Defendants to provide Plaintiff with "necessary and requested and prescribed medical care, accommodations, and protections for … gender dysphoria, disorder of sexual development, and vulnerability." [Id., id. at 14]. Plaintiff asserted claims for violations of rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a; and Article 1, Section 27 of the North Carolina Constitution, which prohibits cruel and unusual punishment. [Id., id. at 9-10].

On August 31, 2023, Judge Boyle dismissed Plaintiff's Eastern District case on initial review for Plaintiff's failure to state a claim for relief in

---

[5] The DTARC and TARC are one and the same and these terms are used interchangeably.

compliance with the Court's June 5, 2023 Order. [Id., Doc. 20 at 2-3 (citing id., Doc. 17 at 2)]. The Court declined to grant the Plaintiff any further opportunity to amend and dismissed Plaintiff's claims pursuant to 28 U.S.C.§ 1915(e)(2)(B)(ii). [Id., Doc. 20 at 2-3]. The Fourth Circuit affirmed the District Court's Order dismissing Plaintiff's Amended Complaint. Hunter v. North Carolina Department of Adult Correction, No. 23-6904, 2024 WL 1406215 (4th Cir. Apr. 2, 2024) (per curiam).

Meanwhile, on or about August 24, 2023, Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 aimed primarily at Foothills officials, naming the following Defendants: (1) "Commissioner of Corrections" Peter R. Buchholtz, (2) Inmate Grievance Resolution Board (IGRB) Director Kimberly D. Grande, (3) Foothills Warden Harold Reep, (4) Foothills Unit Managers Marc. E. Dunn and (5) Eric L. Price, (6) Foothills psychologist and Director of Behavioral Health Marlene Holcombe, (7) Foothills Psychiatrist Jeffrey Lorborbaum, (8) Foothills Physician's Assistant Newton D. High, (9) Foothills Nurse Manager FNU Abee, and (10) Foothills Americans with Disabilities Act (ADA) Coordinator J. Newton. [Doc. 1 at 6].

Plaintiff's Complaint consists of 49 rambling pages, 33 of which were written on toilet paper. The gist of Plaintiff's allegations is essentially the same as what was asserted in Plaintiff's Eastern District case, except now

more focused on Plaintiff's treatment at Foothills rather than by the NCDAC as a whole. Plaintiff alleges that gender affirming care has been denied and as a result Plaintiff has suffered harm. Plaintiff attempts to break this down into eleven separate "claims for relief," but they all generally revolve around the "Right to be free from inadequate treatment and deliberate indifference to serious medical need for having gender dysphoria."[6] [Doc. 1 at 7].

More particularly, Plaintiff alleged that on January 11, 2023, while incarcerated at Central Prison, Plaintiff attempted suicide "due to the inadequate treatment of gender dysphoria and the harsh conditions of confinement." [Id. at 31]. On May 2, 2023, the IGRB upheld Central Prison authorities' decision that Plaintiff does not qualify "for ADA and the rehabilitative services are not mandatory conditions of confinement for Plaintiff." [Id. at 31; see id. at 17-18]. On May 15, 2023, Plaintiff was transferred from Central Prison to Foothills and immediately assigned to Modified Housing for Regular Population (MODH). [Id. at 33]. On May 30, 2023, Plaintiff submitted a request to Behavioral Health Services seeking a treatment plan for gender dysphoria symptoms and a sick call request for

---

[6] Plaintiff expresses this in several ways, including such claims as "Right to be free from discrimination, … Right to private showering and freedom from cross gender voyeurism, …Right to Equal Protection," but the root of each claim is that Plaintiff's alleged gender dysphoria is not being accommodated or treated. [Doc. 1 at 7-8].

7

"treatment associated with disorder of sexual development."[7] [Id. at 36]. On June 2, 2023, Plaintiff was brought before the Foothills FTARC, which consisted of Defendants Dunn, High, Price, Holcombe, Abee, and another unidentified staff member. At this meeting, Plaintiff, among other things, requested protective control and "gender affirming hygiene transitioning items." [Id.]. Defendant Reep was "deliberately indifferent" to Plaintiff's requests for accommodations and treatment. [Id. at 19]. Defendant Grande dismissed Plaintiff's claims of discrimination under the ADA. [Id. at 17-18]. Plaintiff also alleged that Defendant Grande upheld "facility staff decisions to consider that [Plaintiff's] gender dysphoria is [not] a disability."[8] [Id. at 18]. Defendant Dunn rejected Plaintiff's requests for accommodations. [Id. at 21]. Defendant Price denied Plaintiff's requests for gender-affirming medical treatment. [Id. at 22]. Defendant Holcombe failed to properly treat Plaintiff's gender dysphoria, denied Plaintiff inpatient behavioral health services, denied Plaintiff gender-affirming healthcare and accommodations, such as peer support, psychotherapy, access to gender dysphoria specialists, and

---

[7] The term "disorder of sexual development" is now used to describe a physical condition that is entirely different from gender dysphoria. Plaintiff appears to use these terms interchangeably when referring to gender dysphoria, as that term is defined in Kadel, 100 F.4th at 136.

[8] Because this allegation, as written, is inconsistent with Plaintiff's claim of being denied accommodations for an alleged disability, it simply appears Plaintiff omitted the word "not."

8

gender-consistent hygiene and cosmetics needed for social transitioning. [Id. at 23-24]. Defendant Abee failed to properly treat Plaintiff's disorder of sexual development, denied Plaintiff gender-affirming healthcare such as hormone therapy, gender-preferred pronouns, and gender-affirming hygiene transitioning items. [Id. at 28-29]. Plaintiff seeks monetary relief, including punitive damages, and costs. [Id. at 10]. Notably, Plaintiff does not seek injunctive relief. [See id.].

In its initial review Order, this Court found that, "[e]ven though the Plaintiff's allegations are extremely vague," Plaintiff's Eighth Amendment claims against Defendants Dunn, High, Price, Holcombe, and Abee based on their alleged denial of care for Plaintiff's gender dysphoria survived initial review in that such claims were not clearly frivolous. [Doc. 10 at 17]. The Court likewise allowed Plaintiff's official capacity ADA claims against Defendants Reep, Grande, Dunn, High, Price, Holcombe, and Abee to pass initial review based on their alleged denial of ADA accommodations for gender dysphoria. [Id. at 23]. The Court dismissed Defendants Buchholtz, Lorborbaum, and Newton for Plaintiff's failure to state a claim for relief against them. [See id. at 25]. On January 11, 2024, before Defendants answered, the Court allowed Plaintiff to supplement the Complaint with allegations of events that occurred after the filing of the Complaint in this

9

matter. [Docs. 16, 22; see Doc. 18]. Based on allegations that Booker Deorain Feaster, the Facility ADA Coordinator, and Sophia Feaster-Lawrence, the Division ADA Coordinator, denied Plaintiff reasonable accommodations for gender dysphoria under the ADA, the Court allowed Plaintiff to add Feaster and Feaster-Lawrence as Defendants in this matter in their official capacities only. [Doc. 22 at 6, 8; see Doc. 37 at 1 (identifying these Defendants by their true full names)].

Defendants now move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 42 U.S.C. § 1997e(a). [Docs. 26, 37]. Defendants argue that Plaintiff's claims were dismissed with prejudice in a prior action and are, therefore, barred by res judicata and that Plaintiff failed to exhaust administrative remedies. [Docs. 27, 38]. Defendants also argue that "no allegations specific to named defendants present a claim upon which relief can be granted, either by lacking specific allegations, stating allegations defeating his claim, or by alleging facts precluding a claim[.]" [Doc. 26 at 1; Doc. 37 at 1]. In support of their motions, Defendants submitted a memorandum, various records from the Eastern District case, the NCDAC Administrative Remedy Procedure, the Declarations of Kimberly Grande and Doug Newton, and Plaintiff's relevant grievance records. [Docs. 27, 27-1 through 27-14, 38, 38-1 through 38-14].

The Court entered orders, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the right to respond to Defendants' motions. [Docs. 32, 40]. Plaintiff timely responded [Docs. 33, 34, 43] and Defendants did not reply.

The matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering the Defendants' motions, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to the Plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190–92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement...." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of

the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. See also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

A party may assert the defense of res judicata in a Rule 12(b)(6) motion "only if it clearly appears on the face of the complaint." Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993). However, when considering a motion to dismiss based on the defense of res

judicata, the Court may take judicial notice of facts from a prior judicial proceeding so long as the res judicata defense raises no disputed issues of fact. Andrews v. Daw, 201 F.3d 521, 524 (4th Cir. 2000). Because the Plaintiff here does not dispute the factual accuracy of the record of the previous action, the Court may properly take judicial notice of that prior action. Id.

## III. DISCUSSION

"The general rule is well established that once a person has had a full and fair opportunity to litigate a claim, the person is precluded, under the doctrine of res judicata, from relitigating it." Duckett v. Fuller, 819 F.3d 740, 744 (4th Cir. 2016) (citation omitted). The doctrine of res judicata "preclude[es] parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding…." Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004). The doctrine "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." Brown v. Felsen, 442 U.S. 127, 131 (1979). For res judicata to apply, there must be "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Nash Cty. Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981).

13

Case 1:23-cv-00248-MR    Document 46    Filed 01/28/25    Page 13 of 18

> Along with these "three formal elements" of res judicata, "two practical considerations should be taken into account." First, we consider whether the party or its privy knew or should have known of its claims at the time of the first action. Second, we ask whether the court that ruled in the first suit was an effective forum to litigate the relevant claims.

Chandler v. Forsyth Technical Community College, 294 F.Supp.3d 445, 451 (M.D.N.C. Feb. 15, 2018) (quoting Providence Hall Assocs. v. Wells Fargo Bank, N.A., 816 F.3d 273, 276-77 (4th Cir. 2016)).

A court follows the "transactional" approach when determining whether causes of action are identical: "As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect." Ohio Valley Envtl. Coal v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009) (citation omitted). "Under this transactional approach, res judicata will bar a 'newly articulated claim[ ]' if it is based on the same underlying transaction and could have been brought in the earlier action." Clodfelter v. Republic of Sudan, 720 F.3d 199, 210 (4th Cir. 2013) (citation omitted).

In the Eastern District case, Plaintiff sought to prosecute claims related to the NCDAC and its employees failing to treat and accommodate Plaintiff's gender dysphoria. That case was dismissed with prejudice [Doc. 20 at 2-3], and the Fourth Circuit affirmed, Hunter, No. 23-6904, 2024 WL 1406215.

That constitutes an adjudication on the merits of the NCDAC's policies and decisions regarding its approach to Plaintiff as a prisoner who claims to have gender dysphoria and how to treat, house and assign Plaintiff. See Lomax v. Ortiz-Marquez, 590 U.S. ---, 140 S.Ct. 1721, 1725 (2020) (noting that when a court dismisses an action for failure to state a claim for relief, but neglects to specify with or without prejudice, the dismissal is treated as an "adjudication on the merits"); McLean v. United States, 566 F.3d 391 (4th Cir. 2009) (in § 1915 context, "[a]n unqualified dismissal for failure to state a claim is presumed to operate with prejudice"), abrogated on other grounds by Lomax, 140 S.Ct 1721.  Plaintiff's entire case herein is built upon an attempt to re-litigate those issues.  Those decisions by the NCDAC constitute the "same … series of transactions as the claim resolved by the prior judgment," and thus preclude such re-litigation.  Ohio Valley, 556 F.3d at 210; see also, R.A. v. McClenahan, 122 F.4th 143 (4th Cir. 2024).  The fact that Plaintiff now seeks to bring this claim against different NCDAC employees who are now applying these NCDAC policies and decisions – because Plaintiff has been transferred to a different prison – is of no consequence.  Plaintiff cannot re-litigate such NCDAC policies and determinations every time Plaintiff is transferred.

Particularly, in the Eastern District case, Plaintiff complained that (1) the Defendants repeatedly rejected Plaintiff's requests for gender-affirming healthcare and surgery and gender-consistent facility housing, (2) the Defendants failed to adequately treat Plaintiff's gender dysphoria and disorder of sexual development; and (3) the Defendants "constantly denied [Plaintiff] protections."  In that action, Plaintiff sought medical care, accommodations, and protections for gender dysphoria and a disorder of sexual development and claimed, *inter alia*, violations of the Eighth Amendment and the ADA.  Although Plaintiff's Eighth Amendment claim in the instant case involves the alleged denial of care for gender dysphoria at Foothills, rather than at Plaintiff's previous places of incarceration, the alleged denials are nonetheless based on Plaintiff's same conditions and determinations under the same set of procedures and standards as the denials alleged in the Eastern District case.  Plaintiff cannot file a new lawsuit based on the same alleged denial of care for gender dysphoria simply because different employees of the NCDAC apply the same relevant policies and decisions.  Therefore, the first and second elements of res judicata are met.

This also satisfies the third element.  The interests of the Defendants in the instant case were adequately represented by the interests of the

Defendants in the Eastern District case. Although the Defendants named are different, the "TARC" entities share the same purpose and are comprised of NCDAC officials with the same interests. Moreover, these sets of Defendants are so identified in interest with one another that they represent the same legal right relative to the Plaintiff's claim.[9] See Jones v. SEC, 115 F.3d 1173, 1180 (4th Cir.1997) (internal quotation marks omitted), cert. denied, 523 U.S. 1072 (1998) ("[T]he privity requirement assumes that the person in privity is so identified in interest with a party to former litigation that he represents *precisely the same legal right* in respect to the subject matter involved."). For these reasons, the Court concludes that the third element is met relative to Plaintiff's Eighth Amendment claim.

Because the elements of res judicata are met here as to both of Plaintiff's remaining claims, the Court will grant Defendants' motions to dismiss on this ground with prejudice. Because no claims remain, the Court declines to address the exhaustion issue.

---

[9] Plaintiff asserted a claim pursuant to the ADA in the Eastern District case and in the instant case. Of course, the ADA does not create any individual capacity cause of action. Baird ex rel Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999). Rather the "public entity" is the liable party. 42 U.S.C. § 12132. That public entity, however, was the prevailing party in the Eastern District case. As such, Plaintiff's ADA claim is likewise barred by res judicata.

## IV. CONCLUSION

In sum, for the reasons stated herein, the Court grants Defendants' motions to dismiss.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motions to Dismiss [Docs. 26, 37] are **GRANTED**, and this is action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: January 27, 2025

Martin Reidinger
Chief United States District Judge